FRANK v. MUSLINER et al.

(Supreme Court, Appellate Division, First Department. November 7, 1902.)

1. BANKRUPTCY—CONVEYANCES BY BANKRUPT—VACATION BY TRUSTEE—RECOVERY OF PROPERTY CONVEYED—EVIDENCE.

In an action by a trustee in bankruptcy to recover from defendants goods received from the bankrupt under a bill of sale void because executed within four months of the filing of the bankruptcy petition, a decree against defendants for the goods admitted to be in their possession, and for goods of the value of $4,600 unaccounted for, without prejudice to the trustee's claim to goods taken in certain replevin suits, in case defendants should succeed in establishing their title thereto, *held* sustained by the evidence.

2. SAME—EVIDENCE—ADMISSIBILITY.

In an action against a purchaser under a bill of sale from a bankrupt which was invalid because executed within four months of the filing of the bankruptcy petition, to recover the goods sold, evidence that the bankrupts had secreted certain of their property was admissible only indirectly to show the goods on hand at the date of the bill of sale.

3. SAME—NATURE OF ACTION—LAW OR EQUITY—OBJECTION—WAIVER.

An objection that a suit by a trustee in bankruptcy to recover goods of the bankrupts received under a bill of sale executed within four months of the filing of the bankruptcy petition was at law, and not in equity, was waived where not interposed by the answer, and where defendant consented that a referee should hear and determine the issues.

4. SAME—OFFER TO RETURN GOODS.

Where a trustee in bankruptcy claimed that the amount of goods received by defendant under a void bill of sale greatly exceeded the value of goods admitted by defendant to have been received, and defendant offered to return the goods admitted to have been received on condition that all proceedings to recover more goods than those surrendered should cease, an objection that the action could not be maintained because defendant had offered to return the goods was not well taken.

5. SAME—FRAUD OF BANKRUPTS—CONDONATION BY CREDITORS—EFFECT.

Where bankrupts fraudulently attempted to dispose of their stock, and in pursuance of such fraud executed a bill of sale to defendants, who acquired thereunder goods largely in excess of their claim, it was no defense to a subsequent action by the trustee in bankruptcy, to recover the goods so obtained, that the action was instituted in pursuance of a conspiracy between the bankrupts and other creditors, in that such creditors had ceased to prosecute the bankrupts on their giving evidence as to the value of goods received by defendants.

78 N.Y.S.—24

6. SAME—PARTIES—BANKRUPTS.

In an action by a trustee in bankruptcy to recover goods received by defendants under a void bill of sale, a motion to dismiss the complaint on the ground that the bankrupts were not served and made parties was without merit, since, as the bankrupts were liable under the bankrupt act, and, the bill of sale being void, they must account for the goods, they were not necessary parties to the action.

7. SAME—HARMLESS ERROR.

Where, in an action to recover the value of goods received from a bankrupt under a void bill of sale, the referee found the value as of the date of the bill of sale, the admission of evidence that the goods had been subsequently enhanced in value was without prejudice.

Appeal from judgment on report of referee.

Action by Mannie Frank, as trustee in bankruptcy, against Isaac Musliner and others, to recover goods received by defendant under a void bill of sale. From a judgment entered on report of referee in favor of plaintiff, defendants appeal. Affirmed.

See 60 N. Y. Supp. 332.

The action was brought by a trustee in bankruptcy to set aside, under section 60 of the bankruptcy act of July 1, 1898, a bill of sale made by the bankrupts while they were insolvent, on the 7th day of December, 1898, within four months prior to the filing of the petition in bankruptcy, and to have an accounting of the chattels so transferred.

The bankrupts, Collucci and Granieri, were engaged as partners in the wholesale leather business on the first floor and basement of 2084 Second avenue, and on the day named they assigned all their stock to Joseph Meyer for the purpose of securing an indebtedness to Sidney Dew of $159.32, and to Joseph Musliner & Co. of $1,819.05; any surplus to be apportioned among their other creditors. The answer of Musliner & Co., who received the goods under the bill of sale, admitted the making thereof,—the other defendants not pleading,—and consented that the issues be referred to a referee to hear and determine. At the opening of the trial, they moved to dismiss the complaint on the ground that Collucci and Granieri were not served and brought in as defendants, and upon the ground that the action, if any, is in common law, and not equity; and both motions were denied, and exceptions taken. They then admitted that the bill of sale given on December 7, 1898, was within four months of the petition in bankruptcy; and the goods were delivered to them, Joseph Meyer being their employé; and they refused to deliver the same to the plaintiff; and that the bankrupts had no authority under the bankrupt act to make the bill of sale.

The principal issue upon the trial was as to the quantity and value of the goods received by the defendants; and on the subject the plaintiff offered the testimony of a salesman who had been in the leather business for 20 years, and had sold goods to the partners in 1898 for which they had not paid, and who went to their place the day before the failure for the express purpose of seeing how much stock they had. He testified that he was familiar with their business, and was accustomed to estimating stock by looking at it, knowing the space a certain amount of leather would occupy, and its value; that he spent an hour, while the partners were at lunch, estimating the stock on the first floor, and there was about $4,500 of sole leather, $2,500 of cut stock, $2,500 of findings, $2,000 of calf skins, and $1,000 of lasts, tools, etc., making $12,500 of stock, all of which was in good condition and none of it disturbed, and so he tried to sell some more goods; that after the assignment he went to Musliner & Co., and saw there stock worth $2,500, although Mr. Musliner, knowing its real value, claimed it was worth but $300. He admitted that he had signed an agreement that if the partners who had left the state upon their failure would return, and give information of the goods, they would not be sued. Another creditor testified that just before the as-

¶ 6. See Bankruptcy, vol. 6, Cent. Dig. § 448.

signment he saw about 600 sides of leather ($3,000), and other goods, and no signs of their removal, and the store is 20x50, and the annex, or "L," 30x50. Collucci, one of the bankrupts, testified that he made the bill of sale at the solicitation of Silas Musliner, a son of one of the defendants, who said that otherwise their company would be ruined, and promised to give creditors the balance of the stock; and he signed the bill of sale, leaving the name of the transferee blank; that he had a general stock worth $15,000 or $16,000, one-fourth of which was in the cellar; and his liabilities then were $20,000 to $22,000, and only $2,000 of good bills owing to the firm; that the insurance then carried was, as previously, $8,000. He testified further that they had no books or record of checks, and denied that any goods had been removed and received back. On cross-examination he admitted that in December, 1898, he had stated that the stock was worth $3,000, but desired to make it $15,000, as he carried always a bigger stock, but finally said he could not say anything as to the value. One of the creditors testified that he had a talk with Isaac Musliner the night after the failure, others being present, and asked him about the partners, and he said he had bought some goods from that firm, indirectly, from a third party, who was a small leather dealer whose name he would not disclose, and the goods were worth $300 to $800; that Silas Musliner, who was there, said he had seen recently, at the store of the partners, a stock of about $12,000. A lawyer of the creditors, who was also present that evening, testified that Isaac Musliner said that during the afternoon a man who was a small leather dealer came to him, and said he had purchased some leather, and had no room to store it, and requested that privilege, which was granted, and then the goods were bought, and, though there were nine truck loads, they were not worth more than $700; and that he further stated that his son had reported that the stock of the partners was intact, and the son then said there was $12,000 worth. He further testified that Mr. Musliner was willing to join in the search, and suggested that some goods had been sent to Providence, and so several of the creditors went there that night, but found no goods. Another creditor corroborated this interview. A truckman then testified for the plaintiff that he had been hired by Joseph Meyer to carry the goods to the premises of Musliner & Co., and told to hurry up, and that he took four large truck loads, the afternoon of December 7, 1898, of sole leather packed flat, and carried five more loads of goods the next morning. Joseph Meyer testified that he took everything of value, and it was put mostly in their place at Houston street, some in a loft across the street, and some in their store at Gold street; that some was distributed in the store wherever there was room for it, the other goods being moved back, and some was thrown down the cellar, and he could not distinguish the stock from any other, and no inventory was then taken. Mr. Musliner testified that they put it wherever they could find room, and that some of the creditors replevined some of the goods, and carried them away in two loads, and thereafter he made an inventory of all the stock that remained, and the replevined goods were separately inventoried; that by his directions none of the goods were sold or secreted; and that he had offered to give them all up, provided proceedings against him would cease, but the creditors claimed that he had more goods than he had. The inventories referred to show that the value of the replevined goods on December 7, 1898, was $1,271.02, and those remaining after replevin, $1,568.14. The other partner, Granieri, testified that they had a store full of all kinds of stock, but on closer examination could say nothing of their exact amount or value.

The defendants, besides trying to show that the goods received were small in amount, and were all accounted for, offered evidence that the partners had disposed of the balance of their stock by sending it, during November, to a relation in Providence, and by secreting it with their friends. It was proved by freight receipts that some goods had been sent to Providence, but in no large amount; nor were any such goods discovered there when the creditors made search. Guiseppare Larotonda, who had been employed by the partners, and who had been evicted by the wife of one of the partners for nonpayment of rent, testified for the defendants that in November, 1898, he carried goods to three different houses, and after the failure brought

them back to the store, and there was scarcely anything left on December 7, 1898. All the persons named by this witness were called, and denied that any goods had been in their houses or returned. It is in evidence that the relation in Providence came to New York after the failure, and carried on the leather business at the old place, and that before his death, which followed soon after, he sold his rights therein to the wives of the old partners, who are now carrying on the business; Collucci and Granieri being employed there. It appears, also, that the replevin action was defended by the defendants, and is still pending.

Upon the evidence, the referee found that, apart from the replevined goods, the defendants were liable for the goods admitted to be in their possession, and worth $1,564.14, on December 7, 1898, or the value thereof, and for goods, unaccounted for otherwise, of the value of $4,636.32 on December 7, 1898. The judgment entered therefore provided that the defendants should return the goods in their possession, or else be liable for their value, $1,568.14, on December 7, 1898, and that they were liable for goods entirely unaccounted for, and worth, on December 7, 1898, $4,636.32, without prejudice to any claim of the plaintiff to recover from the defendants the possession of the goods taken in the replevin action in the event that the creditors in that action should not succeed in establishing title to such property as against the defendants. From judgment so entered, the defendants appeal.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Leonard Bronner, for appellants.

Samuel Fleischman, for respondent.

O'BRIEN, J. Upon the merits, we think that the evidence supports the referee's conclusion as to the value of the goods received by the defendants under the bill of sale, and for which they are accountable to the trustee in bankruptcy. It is not disputed that the partners were insolvent when the transfer was made, and the bill itself apprized the defendants of other creditors, and this knowledge was reaffirmed at the meeting the day after the failure, when, instead of admitting that the goods had been received from the firm, the defendants asserted that they came from a third person, who was a small leather dealer, and understated the value, and sent the creditors to search in Providence. Although the partners said that no books existed showing the value of the stock, it was testified that it was the usual stock, which was insured for $8,000, and that the store, which was a large one, was full of goods, and nine large full truck loads were carried away. The statement of Collucci that there was a stock of $15,000 was corroborated by that of the salesman, who was thoroughly competent to make an accurate estimate, and who said that the goods in the store were worth $12,500, not including those in the cellar, which constituted one-fourth of the whole. Moreover, the defendant himself had said that the stock was intact, and his son, who was sent to the store for that purpose, stated that he saw $12,000 of goods there. The other testimony is that the store was full and well stocked, and the testimony that goods had been otherwise removed and secreted was wholly discredited and overborne by the weight of evidence. The defendants, in their two inventories of the replevined goods and those remaining thereafter, accounted only for stock worth $2,839.16; and that this was the real value is further discredited by the conduct of the defendants,—first, in naming one of their employés as transferee; by their

hurry in getting possession of the goods; their failure to inventory them; their scattering them in three places, and putting them in any convenient spot, although they were similar to their own goods; their denying that they had goods; and their statement as to the small leather dealer; their misstatement of their value; and their refusal to deliver the goods except on stipulation to discontinue suit. On the other hand, the referee's estimate, which would place all the goods at between $7,000 and $8,000, is well within the evidence.

The exception to the referee's conclusion of certain evidence tending to show that the partners had secreted certain property is without merit, as much evidence of this kind was admitted, and it was competent only indirectly as showing the goods on hand at the date of the bill of sale.

Another exception—that the action is one at law, and not in equity—is not available, since it was not interposed in the answer, and consent was given that a referee should hear and determine the issues. Although nothing was said in so many words, in the judgment, about the bill of sale, the terms thereof show upon their face that it was deemed to be void. Moreover, this the defendants had expressly admitted at the opening.

The point that the defendants had offered to return the goods is not well taken, for the evidence shows that there was never an unequivocal offer to return; the defendants demanding, as a condition, that all proceedings to recover more goods of them than those surrendered should cease. The judgment entered does provide that they may return the goods they have or else pay the value thereof. So, too, the argument that the plaintiff cannot recover of the defendants because the action is instituted in pursuance of a conspiracy between the partners and the creditors is specious, for, although the creditors have ceased to prosecute the partners for their wrongdoing, that is no reason that the defendants, who profited thereby, should not be held to account. And for the same reason, although the point is not made on this appeal, the exception taken at the opening, to the refusal, to dismiss the complaint, on the ground that the partners were not served and brought in as defendants, is without merit, inasmuch as the defendants are liable, nevertheless, under the bankrupt act, and, the bill of sale being void, must account for the goods. Nor were the defendants prejudiced, since they too, being creditors, may share with other creditors at the hands of the trustee.

The further points—that it was error to allow evidence of the enhanced value of the goods, and that the judgment erroneously allows recovery for the full value of the goods originally taken, which would render defendants liable for the goods taken from them in the replevin actions—are both without foundation. As to the first, it appears that, although evidence of the enhanced values was given, the referee took only the values of the goods as of December 7, 1898, when they were transferred; and as to the second, the judgment distinctly shows that the referee held the defendants for the goods they admitted to be in their possession, and for the goods unaccounted for by them exclusive of the replevied goods, as to which this judgment was to be "without prejudice"; leaving the question as to whether

the defendants should eventually account for such goods to be determined after the replevin action is decided.

We think, therefore, upon the whole case, that the judgment appealed from should be affirmed, with costs. All concur.